## CHAMBERS v. SMACK.

Supreme Court. Kent. March, 1800.

*Wilson's Red Book, 282.**

*Ridgely* for plaintiff. *Vining* and *Rodney* for defendant.

This was an action on a promissory note, vulgarly called a wheat note, given by defendant to the plaintiff for the consideration of forty-six bushels of wheat delivered on the 27th November, 1794, on which day the note bore date. The defendant pleads payment and discount.

The defendant kept a mill-book in which there was an entry of the amount of the wheat he received of different persons, together with its weight and prices. The book also contained a column in which was entered the time of credit given him by those from whom he purchased wheat, or to mark the word "paid" in, if he advanced the money on the delivery of the wheat.

---

* This case is also reported in *Clayton's Notebook, 24.*

This book was offered in evidence to substantiate the plea of payment, the word "paid" being marked or written in the column opposite the entry of the receipt of the wheat, its weight, prices etc., to which plaintiff's counsel objected on two grounds: first, on the ground that the evidence furnished by the book was irrelevant; and secondly, supposing the book to be admissible on the ground of its relevancy, yet it contains a charge of cash, which according to the Act of Assembly, [1 Del.Laws] 328, 329 is not such an article as is properly chargeable in an account.

The questions on the above grounds being argued at considerable length, the Court delivered their opinions as follows.

JOHNS, C. J. This is a case of great importance, and my brother nor myself do not recollect any determination of the express point since the organization of the present courts. I do recollect a single case determined in New Castle County before the existence of the present judiciary system. The case I allude to was in 1784. I was of counsel in the cause. It was between Boggs and Lewden; the principal point of defense was a discount from the defendant's book. In the course of the examination of the defendant relative to his book, it was proposed to ask him whether he had not received payment of the money charged on his book. The objection was principally whether the question was a proper one. The point relative to the cash article was mentioned but not insisted on by Mr. Tilghman, of counsel for the plaintiff. I afterwards asked the counsel on both sides, to wit, the late Chief Justice Read and Mr. Tilghman, their opinion with regard to the charge of the cash item, and they disagreed upon the point. Mr. Tilghman was clearly of opinion that cash could not be regularly charged in a book of accounts. Mr. Read was of an opposite opinion.

The question with regard to the admission of defendant's book in the present case is of the utmost importance. Two distinct points have been insisted against its admission. First, that the evidence it furnishes is irrelevant. Secondly, admitting its admissibility on the ground of relevancy, yet that it contains charges of a cash article, which according to the Act of Assembly is not such an article as is properly chargeable in an account. The reason why I am of opinion (for between me and my brother there is a shade of difference of opinion) that the book is not admissible is because it appears to me to be merely a mill-book relative to the delivery of wheat and does not seem to be a book of accounts.

The Court, however, are of opinion that this book is evidence in some respects, such as the receipt of wheat, its weight and

quantity, but not so far evidence as by the word "paid" in the middle column to prove the consideration money of the wheat, in this case, to have been actually paid.

My brother Clayton is of opinion it is irrelevant, but the Court are of opinion that it is so far evidence as they have already stated and may be read to the jury for those purposes.

CLAYTON, J., observed that the Court were very unwilling to determine the point with regard to the propriety of charging money in an account, as it has always been the practice of the country to make such charges, of which he gave a number of instances; for the practice of the farmers throughout the country, about the time of harvest, is to borrow money from the storekeepers to pay their harvest laborers, which money is charged by the storekeepers on their books as of the same day and date. He knew of no instances of these kinds of notes or receipts being ever given or required. On the other hand, he was unwilling for his own part to determine that money is an article properly chargeable in an account so far as to exonerate a man from the payment of a bond by charge of money against it, such a practice, he conceived, if allowed, would be mischievous in the highest degree, as it would enable a dishonest man to furnish himself with evidence to defeat the payment of an honest bond against him. It is for these reasons that in this case the Court have avoided the determination of the point which has been in fact agitated at the bar.

———

*N. B.* This note was furnished by Mr. Fisher, but Mr. Ridgely told me he thought it in some respects inaccurate.

I can neither see the application of the Act, p. 328, 329, nor legal grounds for hesitation on a cash item when fairly charged by a defendant. The Act of Assembly, p. 328, 329, referred to is like the 29 Car. II, c. 3, s. 4, that no action shall be brought upon a consideration of marriage, of lands sold, or for a contract to be performed after a year, or to charge any person for the debt of another of £10 or upwards, unless upon a writing signed, "except for goods, wares merchandises sold and delivered and other matters which be and are chargeable in an account, in which case the oath or affirmation of the plaintiff together with a book regularly and fairly kept shall be allowed in all cases to be given in evidence in order to charge the defendant or defendants with the sum or sums therein contained." This exception clearly, in expression, extends only to charge a person for the debt of another for articles properly chargeable in account, evidenced by

the plaintiff's oath and book for a sum above £10. Yet if such evidence shall be competent to charge a third person as a collateral undertaken for the debt of another, *a fortiori* to charge a defendant for his own debt, and therefore such has been the practice under the Act. And there being no other Act affecting plaintiff's books, there may arise a question whether cash is properly chargeable in account when such account is claimed by a plaintiff, for the Act only extends to charge a defendant; defendant's accounts being already regulated by the Act about defalcation, [1 Del.Laws] 162, by which a simple contract debt may be discounted by plea against even a demand by specialty and may be supported by parol proof or by defendant's "book regularly kept with fair entries," which will extend to cash items, unless it can be said that money paid ought not to be charged.